IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:15-CV-80-D

| | | |
|---|---|---|
| JOHNNY B. BECK, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND RECOMMENDATION** |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Johnny B. Beck, III ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on the grounds that he is not disabled. The case is before the court on the parties' motions for judgment on the pleadings. (D.E. 25, 31). Both filed memoranda in support of their respective motions. (D.E. 26, 32). The motions were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* 18 Dec. 2015 Text Order). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

I.      **BACKGROUND**

   A.      **Case History**

Plaintiff filed an application for DIB and an application for SSI on 19 May 2010, alleging a disability onset date of 1 October 2008 in both. Transcript of Proceedings ("Tr.") 123. The applications were denied initially and upon reconsideration, and a request for a hearing was

timely filed. Tr. 123. On 25 August 2011, a video hearing ("the 2011 hearing") was held before an administrative law judge ("ALJ"), at which plaintiff, proceeding pro se, and a vocational expert testified. Tr. 40-58. The ALJ issued a decision denying plaintiff's claims on 9 September 2011. Tr. 123-33. Plaintiff timely requested review by the Appeals Council. Tr. 194. On 7 February 2013, the Appeals Council allowed the request and remanded the case to an ALJ for consideration of the 9 February 2011 decision by a hearing officer with the North Carolina Department of Health and Human Services ("NCDHHS") allowing plaintiff Medicaid disability benefits ("state Medicaid decision"). Tr. 139-40.

On 23 October 2013, a second hearing ("the hearing") was held before the same ALJ who presided at the 2011 hearing at which plaintiff, represented by a nonattorney representative,[1] testified. Tr. 59-80. A vocational expert also testified, but only very briefly in response to questions by plaintiff's representative. Tr. 78-79. On 15 November 2013, the ALJ issued a decision again denying plaintiff's claims for DIB and SSI. Tr. 20-33. Plaintiff timely requested review by the Appeals Council. Tr. 14-16. On 1 April 2015, the Appeals Council denied the request for review. Tr. 1-6.

At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. On 27 April 2015, plaintiff commenced this proceeding for judicial review of the ALJ's 15 November 2013 decision, pursuant to 42 U.S.C. §§ 405(g) (DIB) and 1383(c)(3) (SSI). (*See In Forma Pauperis* ("IFP") Mot. (D.E. 1); Order Allowing IFP Mot. (D.E. 4); Compl. (D.E. 5)).

B.     **Standards for Disability**

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

---

[1] The transcript of the hearing misidentifies plaintiff's representative as an attorney. *See, e.g.*, Tr. 59.

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [§ 404.1509 for DIB and § 416.909 for SSI], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings ["Listings"] in [20 C.F.R. pt. 404, subpt. P, app. 1] . . . and meets the duration requirement, we will find that you are disabled. . . .

> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other

work.  If you can make an adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.  . . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis.  *Pass*, 65 F.3d at 1203.  The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy.  *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."  20 C.F.R. §§ 404.1523, 416.923.  If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process.  *Id.*

### C.    ALJ's Findings

Plaintiff was 42 years old on the alleged onset date of disability and 47 years old on the date of the hearing.  *See, e.g.*, Tr. 32 ¶ 7.  The ALJ found that plaintiff has at least a high school education (Tr. 32 ¶ 8) and past relevant work as a carpenter, welder, retail manager, and equipment operator (Tr. 32 ¶ 6).

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the date of alleged onset of disability.  Tr. 22 ¶ 2.  At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations:  status post anterior cervical discectomy/fusion, multilevel lumbar degenerative disc disease, and adjustment disorder.  Tr. 22 ¶ 3.  At step three, the ALJ found that plaintiff did not

have an impairment or combination of impairments that meets or medically equals any of the Listings. Tr. 23 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a limited range of sedentary work:

> [T]he claimant has the [RFC] to perform sedentary work as [described] in 20 CFR 404.1567(a) and 416.967(a) except with an option to sit/stand changing positions every thirty minutes to one hour, occasional posturals[2] but no climbing, and occasional overhead reaching. The claimant is limited to work involving simple routine, repetitive tasks.

Tr. 24 ¶ 5 (footnote omitted). The ALJ described sedentary work as "requiring lifting and carrying no more than 10 pounds at a time, sitting for six hours in an eight-hour workday, and standing and walking for two hours in an eight-hour workday." Tr. 24 n.1 ¶ 5.[3]

Based on his determination of plaintiff's RFC, the ALJ found at step four that plaintiff was unable to perform his past relevant work. Tr. 32 ¶ 6. At step five, the ALJ accepted the testimony of the vocational expert at the 2011 hearing and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of food order clerk, assembler, and quality control inspector. Tr. 32-33 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled from the date of the alleged onset of disability, 1 October 2008, through the date of the decision, 15 November 2013. Tr. 33 ¶ 11.

---

[2] Postural activities include climbing, balancing, stooping, kneeling, crouching, and crawling. *See*, *e.g.*, Soc. Sec. Ruling 85-15, 1985 WL 56857, at *6-7 ¶ 2.a, b (1 Jan. 1985).

[3] The regulations cited by the ALJ in his RFC determination describe sedentary work as "involv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a); *see also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "S-Sedentary Work," 1991 WL 688702. "Sedentary work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. §§ 404.1567, 416.967.

## II. STANDARD OF REVIEW

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id.*

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible

without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## III.  OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff contends that this case should be remanded for the award of benefits or, in the alternative, a new hearing on the grounds that the ALJ erred in assessing the opinions of physician's assistant Laura Ivey, PA-C; the state Medicaid decision; plaintiff's credibility; and plaintiff's RFC.  Plaintiff also argues that the ALJ posed an incomplete hypothetical to the vocational expert.  The court will address each contention in turn.

## IV.  ALJ'S ASSESSMENT OF OPINIONS OF PA IVEY

### A.  Applicable Legal Standards

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled.  *See id.* §§ 404.1527(c), 416.927(c); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D.W. Va. 2009) ("Pursuant to 20 C.F.R. § 404.1527(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record.  20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. Ruling 96-2p, 1996 WL 374188 (2 July 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinions, and their consistency with the record. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Ashmore v. Colvin*, No. 0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [*i.e.*, giving less weight to the testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

The factors used to determine the weight to be accorded the opinions of physicians and psychologists (and other "acceptable medical sources") not given controlling weight also apply to the opinions of providers who are deemed to be at a different professional level (or so-called "other sources"), including physician's assistants. *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *2, 4 (9 Aug. 2006); *see also* 20 C.F.R. §§ 404.1513(d) (partial listing of "other sources"); 416.913(d) (same). As with opinions from physicians and psychologists, the ALJ must explain the weight given opinions of other sources and the reasons for the weight given. *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *6; *Napier*, 2013 WL 1856469, at *2. The fact that an opinion is from an acceptable medical source may justify giving that opinion greater

weight than an opinion from a source that is not an acceptable medical source, although circumstances can justify giving opinions of sources that are not acceptable sources greater weight. Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *5.

The same basic standards that govern evaluation of the opinions of treating medical sources not given controlling weight and explanation of the weight given such opinions apply to the evaluation of opinions of examining, but nontreating sources, and nonexamining sources. *See* 20 C.F.R. §§ 404.1527(c), (e); 416.927(c), (e); *Casey v. Colvin,* No. 4:14–cv–00004, 2015 WL 1810173, at *3 (W.D. Va. 12 Mar. 2015), *rep. & recommendation adopted by* 2015 WL 1810173, at *1 (21 Apr. 2015); *Napier v. Astrue*, No. TJS-12-1096, 2013 WL 1856469, at *2 (D. Md. 1 May 2013). More weight is generally given to the opinions of a treating source than to the opinions of a nontreating examining source and to the opinions of an examining source than the opinions of a nonexamining source. *See* 20 C.F.R. §§ 404.1527(c)(1), (2); 416.927(c)(1), (2). Under appropriate circumstances, however, the opinions of a nontreating examining source or a nonexamining source may be given more weight than those of a treating source. *See*, *e.g.*, Soc. Sec. Ruling 96-6p, 1996 WL 374180, at *3 (2 July 1996).

Opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2, 5 (2 July 1996). But these opinions must still be evaluated and accorded appropriate weight. *See* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of

disability, including opinions from medical sources about issues reserved to the Commissioner.").

### B. Analysis

PA Ivey treated plaintiff from at least 8 November 2011 to 10 September 2013, seeing him 18 times over this period. Tr. 524-76. She completed a questionnaire dated 10 October 2013 consisting of 14 typewritten "yes/no" questions, adding brief handwritten comments in response to 3. Tr. 758-59. Many of the questions simply recite undisputed results of MRI scans or other imaging of plaintiff's spine (*see, e.g.*, Tr. 758 nos. 1-3, 9; Tr. 759 no. 10)[4] and the undisputed effects of the conditions described (*see, e.g.*, Tr. 758 nos. 4-6). The opinions of PA Ivey that appear to be in dispute are that plaintiff must "recline through the day at unpredictable intervals to help relieve the spinal pain" (Tr. 758 no. 7); there is "MRI evidence of ossification of the posterior longitudinal ligament ["OPLL"] that flattens the ventral cord at C4-5"—that is, evidence of narrowing of the spinal canal (Tr. 758 no. 9); and "[g]iven the nature and severity of his pain, . . . [plaintiff] could [not] engage in work on a regular, productive and consistent basis for 8 hours a day and 40 hours per week," thereby signifying that he is disabled. (Tr. 759 no. 14).

In his decision, the ALJ summarized PA Ivey's opinions as follows:

In October 2013, Laura Ivey, PA-C competed a questionnaire reporting the claimant's lumbar and cervical conditions caused chronic pain and numbness and weakness of his hands. She noted that the claimant was most comfortable in a sedentary lifestyle per his reports. Ms. Ivey stated the claimant must recline through the day at unpredictable intervals to help relieve spinal pain, and he was not able to engage in work on a regular, productive, and consistent basis for eight hours a day and forty hours per week. (Exhibit 19F)

Tr. 30 n.5 ¶ 5.

The ALJ explains that he gave PA Ivey's opinions "little weight":

---

[4] The relevant imaging reports are at Tr. 402-04, 692-93, 695-96.

> As for the opinion of Laura Ivey, PA-C, Ms. Ivey is not an acceptable medical source pursuant to 20 CFR §404.1513(a) and §416.913(a), and her opinion is contrary to the assessment of [neurosurgeon Thomas E. Melin, M.D.] that there is no significant canal narrowing in cervical spine (Exhibit 18F). Inasmuch as there is little basis for Ms. Ivey's opinion because the weight of the medical evidence as a whole fails to support this opinion and the fact the determination of whether an individual is disabled is reserved to the Commissioner pursuant to Section 404.1527 [and 416.927], I accord this opinion little weight.

Tr. 30 ¶ 5 (footnote set out as preceding quotation omitted).

Plaintiff argues that, in noting that PA Ivey is not an acceptable medial source, and thereby a so-called "other source," the ALJ essentially dismissed her opinions without analyzing them as required under the Regulations and related authorities. But the ALJ's discussion of PA Ivey's opinions itself belies this contention. As it illustrates, the ALJ did not stop his analysis by identifying PA Ivey as an other source, but went ahead and further evaluated her opinions, citing factors appropriate for consideration under the applicable law. *See*, *e.g.*, Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *2, 4; 20 C.F.R. §§ 404.1527(c), 416.927(c).

The ALJ interpreted PA Ivey's finding that "there [is] MRI evidence" of narrowing of the cervical spinal canal as a finding that such narrowing exists. The literal fact that evidence of such narrowing exists is indisputable; the report of the radiologist on the MRI taken 7 January 2013 finding narrowing constitutes such evidence. *See* Tr. 696. In any event, plaintiff concedes, as he must, that the ALJ was correct in finding that plaintiff's treating neurosurgeon, Dr. Melin, determined that there was no significant narrowing. Dr. Melin had performed a cervical discectomy and fusion on plaintiff in 2004 and subsequently saw him from at least 19 December 2008 to 20 March 2013. *See* Tr. 356, 413-31,[5] 753-56. In his report on his 20 March 2013 visit with plaintiff, Dr. Melin states:

> I personally reviewed the patient's MRI scan of the cervical spine. . . . There is evidence of OPLL at the C4-5 level but the spinal canal measures approximately

---

[5] A duplicate copy of Tr. 429 appears at Tr. 361 and a duplicate copy of Tr. 431 at Tr. 363.

> 10 mm in the anterior/posterior dimension. Likewise, at the C7-T1 level the canal is in excess of 10 mm in anterior/posterior dimension.
>
> . . . .
>
> In reviewing this gentleman's films it would be my opinion that there is no significant canal narrowing at any level in the cervical spine.

Tr. 753.

Plaintiff nonetheless argues that other findings by Dr. Melin corroborate PA Ivey's opinions. He then cites to a number of Dr. Melin's office visit notes in which Dr. Melin found plaintiff to have significant neck and back impairments. *See* Tr. 413, 427, 431, 754. However, it is not disputed by the Commissioner that Dr. Melin found plaintiff to have significant disease of his spine. Substantial evidence clearly supports the reading of these records that they do not indicate that plaintiff is disabled or must recline at unpredictable intervals throughout the day, as PA Ivey opined. Plaintiff cites to no record by Dr. Melin expressly stating any such finding.

Plaintiff challenges the ALJ's determination that the weight of the medical evidence as a whole fails to support her disputed opinions. Substantial evidence, though, supports the ALJ's determination.

In addition to citing to Dr. Melin's record to support her argument, as just discussed, plaintiff cites to one of PA Ivey's own records, the note on her 10 September 2013 visit with plaintiff, about one month before completion of the questionnaire. Tr. 524-26. The note nowhere states that plaintiff had to recline at unpredictable intervals to help relieve spinal pain. It does say that "[t]he pain is made better with medication and sometimes laying down, and the pain is made worse with activities." Tr. 524. The note also states:

> Patient is sitting reasonably comfortable in the chair. Does not seem to have any difficulties with positional changes, but is slow to rise from the chair and has difficulty rising to standing position. Gait is normal, yet slow without any assistive device.

Tr. 525.

PA Ivey made the same or virtually identical findings in the notes on each of her prior visits with plaintiff, the visits of: 12 July 2013 (Tr. 527, 528), 16 May 2013 (Tr. 530, 531), 16 April 2013 (Tr. 533, 534), 22 March 2013 (Tr. 536, 537), 22 February 2013 (Tr. 539, 540), 25 January 2013 (Tr. 542, 543), 26 December 2012 (Tr. 545, 546), 30 November 2012 (Tr. 548, 549), 31 October 2012 (Tr. 551, 552), 1 October 2012 (Tr. 554, 555), 31 August 2012 (Tr. 557, 558), 2 August 2012 (Tr. 560, 561), 3 July 2012 (Tr. 564, 565), 4 May 2012 (Tr. 566, 567), 6 March 2012 (Tr. 569, 570), 6 January 2012 (Tr. 571, 572), and 8 November 2011 (Tr. 574, 575). These findings are consistent with the ALJ's determination that plaintiff has the RFC to perform a limited range of sedentary work and is not as severely impaired as PA Ivey opined.

Plaintiff also relies on the note on his 22 December 2011 visit with treating orthopedist Todd Rose, M.D. *See* Tr. 592-95. Plaintiff cites specifically to Dr. Rose's assessment that plaintiff had "Multilevel degenerative changes of the lumbar spine. Moderate L4-5 central canal stenosis. Lumbar facet arthrosis. Previous cervical surgery with residual bilateral numbness in the C6 distribution." Tr. 595. Again, though, it is undisputed that plaintiff has significant disease of the spine. While Dr. Rose found that plaintiff manifested various limitations, including an antalgic gait (*see* Tr. 594-95), he did not find that plaintiff has to recline unpredictably throughout the day or that he is disabled.

In addition, plaintiff cites to the opinions of physician's assistant Erica Christensen, PA-C set out in a letter dated 10 May 2011. Tr. 459. As summarized by the ALJ, PA Christensen

> reported that the claimant had been seen for chronic pain management since May 2010 and that he continued to suffer from chronic back pain, which was being managed with medications as well as living a sedentary lifestyle. She opined that the claimant would not be able to work a full time eight-hour workday for forty hours [per] workweek in gainful employment due to his chronic pain. (Exhibit 13F)

Tr. 29 ¶ 5 n.4 .

The ALJ assessed PA Christensen's opinions as follows:

> Although she is not an acceptable medical source pursuant to 20 CFR §404.1513(a) and §416.913(a), some weight is given to the opinion of Erica Christensen, PA-C, that the claimant's pain was managed with medication and a sedentary life style; however, her conclusion that he cannot work is accorded no weight as it is inconsistent with the claimant's presentation upon routine examination, his treatment history, and his ability to engage in activities of daily living as described throughout this decision. Additionally, the final responsibility for deciding whether a claimant is disabled is a determination reserved for the Commissioner as outlined in 20 CFR §§ 404.1527 and 416.927.

Tr. 29 ¶ 5 (footnote set out as preceding quotation omitted). Plaintiff does not directly challenge this assessment, and the court finds that it is supported by substantial evidence.

The ALJ also did not err in giving little weight to PA Ivey's opinion to the effect that plaintiff is unable to engage in work on a regular, productive, and consistent basis for 8 hours a day and 40 hours a week, signifying that he is disabled. *See Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006) ("[RFC is] an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.") (quoting Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *2 (2 Jul. 1996)). As correctly stated by the ALJ, determinations on whether a claimant is disabled are expressly reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). The ALJ's assessment of this opinion by PA Ivey is also supported by the evidence discussed supporting his assessment of her other opinions.

The court concludes that substantial evidence supports the ALJ's assessment of PA Ivey's opinions and that it is otherwise proper. Plaintiff's challenge to it should accordingly be rejected.

## V.    ALJ'S ASSESSMENT OF THE STATE MEDICAID DECISION

### A.    Applicable Legal Principles

Under 20 C.F.R. §§ 404.1504 and 416.904, a decision by any governmental or nongovernmental agency about whether a claimant is disabled is not binding on the Social Security Administration. Nonetheless, Social Security Ruling 06-03p provides that "evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *6. The ruling explains that "[t]hese decisions, and the evidence used to make these decisions, may provide insight into the individual's mental and physical impairment(s) and show the degree of disability determined by these agencies based on their rules." *Id.* at *7. "Decisions by other agencies as to the disability status of a Social Security applicant are considered so probative that the ALJ is required to examine them in determining an applicant's eligibility for benefits." *Alexander v. Astrue*, No. 5:09-CV-432-FL, 2010 WL 4668312, at *4 (E.D.N.C. 5 Nov. 2010) (remanding the case for consideration of a state Medicaid decision). Furthermore, the ALJ should explain the weight given the disability decision by the other agency. Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *7 ("[T]he adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases . . . ."); *see also Owens v. Barnhart*, 444 F. Supp. 2d 485, 492 (D.S.C. 2006) (holding that an ALJ should be "required to provide sufficient articulation of his reasons for [rejecting another agency's disability determination] to allow for a meaningful review by the courts").

### B.  Analysis

The ALJ summarized the state Medicaid decision as follows:

> On May 11, 2011, Jackie Gooch, Hearing Officer with the [NCDHHS] determined that the claimant retained the ability to engage in less than sedentary work with no crouching, crawling, or stooping as evidenced by . . . an x-ray of the cervical spine showing prior fusion and new foraminal stenosis, and additional examinations revealing intense back pain, bilateral lower extremity radiculopathy, central canal stenosis with disc bulging and protrusion. The State Hearing Officer concluded that the claimant's [RFC] precludes him from returning to any relevant past work as performed or as generally performed in the national economy, and the claimant meet[s] the disability requirement referenced in 20 CFR[]416.920(f), Appendix (2) Medical-Vocational Rule 201.00(b), which directs a finding of disability. (Exhibit 11E)

Tr. 30 n.7 ¶ 5.[6]

The ALJ gave the decision no weight.  He stated:

> Although it has been carefully considered, the [NCDHHS] determination of disability is given no weight because it is a misapplication of Medical-Vocational Rule 201.00(b) and contrary to the medical evidence.  I must make my decision using the appropriate Social Security laws and regulations.  A decision by any other governmental agency about whether an individual is disabled is based on its own rules and is not based on Social Security law.  Therefore, a determination made by another agency is not binding on this agency. (20 CFR 404.1504 and 416.904)

Tr. 30 ¶ 5 (footnote quoted in next sentence omitted).  Regarding Medical-Vocational Rule 201.00(b), the ALJ noted "[u]nskilled sedentary work does not negate the capacity for substantial gainful activity (201.00(b))."  Tr. 30 n.8 ¶ 5.

Plaintiff argues that the ALJ erred in not giving the state Medicaid decision more weight. The court finds no reversible error.

---

[6] The Medical–Vocational Guidelines or grids, which are set out in 20 C.F.R. pt. 404, subpt. P, app. 2, are a set of rules that, when applied directly, specify a conclusion as to whether or not a claimant is disabled.  *See generally* Medical-Vocational Rule 200.00(a).  They may also be used as a framework for decision making, as the ALJ here did.  *See* Tr. 32 ¶ 10; *see generally* Soc. Sec. Ruling 83-12, 1983 WL 31253 (1983); Soc. Sec. Ruling 83-14, 1983 WL 31254 (1983).  The Medical-Vocational Guidelines are grouped by RFC for sedentary, light, medium, and heavy or very heavy work, respectively. Within each such RFC grouping, the criteria applied are the vocational factors—namely, age, education, and previous work experience (*e.g.*, none, unskilled, semiskilled, skilled, transferability of skills).

Plaintiff first argues that the ALJ erroneously stated that the state hearing officer found that plaintiff could perform sedentary work, while the decision expressly held that he could perform less than sedentary work. But the ALJ nowhere states that the state hearing officer found plaintiff able to perform sedentary work without limitation. Moreover, the ALJ recited in his decision the hearing officer's determination that plaintiff retained "the ability to engage in *less than sedentary work* with no crouching, crawling or stooping." Tr. 30 n.7 ¶ 5 (emphasis added) (referencing Tr. 336).[7]

Plaintiff next argues that the ALJ erred in finding that the state Medicaid decision was a misapplication of Medical-Vocational Rule 201.00(b), when the decision actually cites to Medical-Vocational Rule 201.00(h). The ALJ did ostensibly err in this respect.[8] But plaintiff has not shown that the error was harmful. *See Garner v. Astrue*, 436 F. App'x 225, 226 n.* (4th Cir. 2011) (citing *Shinseki v. Sanders*, 556 U.S. 396 (2009) for the principle that a claimant attacking an ALJ's determination bears the burden of showing that the alleged error was harmful).

The ALJ appears to be holding that the state hearing officer erroneously deemed plaintiff disabled simply because he can no longer perform skilled work, which contravenes Medical-Vocational Rule 201.00(b). By citing to Medical-Vocational Rule 201.00(h), the state hearing officer's decision suggests, to the contrary, that an individualized determination was made that

---

[7] The state hearing officer's determination that plaintiff could perform "less than sedentary work" appears to signify that he can perform less than a full range of sedentary work. *See generally* Soc. Sec. Ruling 96-6p, 1996 WL 374185, at *5-9 (setting out guidelines for evaluating the ability to do less than a full range of sedentary work, including the inability to lift ten pounds or occasionally lift and carry items like docket files, ledgers, and small tools throughout the workday). Limitation of a claimant to less than a full range of sedentary work is not necessarily disabling, as made clear by Medical-Vocational Rule 201.00(h), which the hearing officer cites. *See* Tr. 336; *see also* Soc. Sec. Ruling 96-6p, 1996 WL 374185, at *3 ("[T]he ability to do even a *limited* range of sedentary work does not in itself establish disability in all individuals . . . ." (emphasis original)).

[8] The decision of the Appeals Council remanding this case for consideration of the state Medicaid decision also erroneously cited to subsection (b) of Medical-Vocational Rule 201.00, instead of subsection (h). *See* Tr. 139.

plaintiff could not adjust to alternative work. But the state Medicaid decision nowhere sets out this determination expressly. Indeed, the state hearing officer never specifies plaintiff's RFC in her decision.

Moreover, the notion that Medical-Vocational Rule 201.00(h) "directs" a finding of disabled, as the state hearing officer found, is erroneous on its face. Medical-Vocational rules directing findings of disabled or not disabled when the claimant's RFC is limited to sedentary work are set out in Table No. 1 of the Medical-Vocational Guidelines. The rule cited by the state hearing officer constitutes an introductory section providing information about application of the rules in Table No. 1.

Notably, as this discussion illustrates, both the ALJ and the state hearing officer found at step four of the sequential analysis that plaintiff cannot perform his past relevant work, and they did so on much the same basis—the condition of his spine. The point of departure is whether there is other work available to plaintiff. The absence of a more meaningful explanation by the state hearing officer of the basis for her ruling at step five, untainted by legal error, detracts significantly from the convincing force of the state Medicaid decision and its evidentiary value. Thus, the ALJ cannot reasonably be expected to have changed his evaluation of the state Medicaid decision even if he had deemed it to make an individualized determination regarding plaintiff's ability to do alternative work.

Plaintiff also argues that the ALJ erred in rejecting the state Medicaid decision on the grounds that it is not based on Social Security law when, in fact, Medicaid decisions are. But it is apparent that the ALJ was aware that the state Medicaid decision was based on Social Security law because he expressly recited citations by the state hearing officer to the Regulations and,

albeit incorrectly, the Medical-Vocational Guidelines (*see* Tr. 30 n.7 ¶ 5), and stated that the decision violated Medical-Vocational Rule 201.00(b) (*see* Tr. 30 n.5).

In making his determination, the ALJ was merely parroting the Social Security regulations, 20 C.F.R. §§ 404.1504 and 416.904, whose gravamen is, as stated by the ALJ, that decisions by other agencies are not binding on the Social Security Administration. These regulations, which are identical, read:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. §§ 405.1504, 416.904. Again, the ALJ stated:

> I must make my decision using the appropriate Social Security laws and regulations. A decision by any other governmental agency about whether an individual is disabled is based on its own rules and is not based on Social Security law. Therefore, a determination made by another agency is not binding on this agency.

Tr. 30 ¶ 5.

Moreover, the state Medicaid decision lends credence to the notion that Social Security law is not applied to the making of Medicaid decisions in entirely the same manner as to the making of Social Security decisions, at least in this instance. For example, the state Medicaid decision fails, as indicated, to state plaintiff's RFC or to explain why, in light of his RFC, alternative work is not available to plaintiff, as required for a decision by a Social Security ALJ. *See*, *e.g.*, *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (requiring that an ALJ state and explain the basis for the RFC determination) (citing Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *7 (2 July 1996))); 20 C.F.R. §§ 404.953(a) (requiring that an ALJ's decision give the findings and reasons for the decision); 416.1453(a) (same). In other words, the state Medicaid decision

would seem to be deficient in these respects under Social Security law, as a decision by a Social Security ALJ with such characteristics would be.

For this and the other reasons stated, the court concludes that, under the particular circumstances presented, the ALJ's recitation of the language in the Regulations on application of Social Security law to decisions of other agencies was not error. Even if it were deemed erroneous, plaintiff has not demonstrated that it was harmful.

The final reason cited by the ALJ for not crediting the state Medicaid decision is that it is contrary to the medical evidence. This reason, of course, is the one that bears most directly on the merits of whether plaintiff is disabled. Substantial evidence supports this basis for the ALJ's rejection of the state Medicaid decision, including medical evidence previously discussed herein and additional medical evidence detailed in the ALJ's decision (*see* Tr. 25-31 ¶ 5).

The court concludes that the ALJ committed no reversible error in his assessment of the state Medicaid decision. Plaintiff's challenge to it should accordingly be rejected.

## VI.    ALJ'S ASSESSMENT OF PLAINTIFF'S CREDIBILITY

### A.    Applicable Legal Principles

The ALJ's assessment of a claimant's credibility involves a two-step process. Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2 (2 July 1996); *accord Craig v. Chafer*, 76 F.3d 585, 589 (4th Cir. 1996). First, the ALJ must determine whether the claimant's medically documented impairments could cause the claimant's alleged symptoms. Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2. Next, the ALJ must evaluate the claimant's statements concerning those symptoms. *Id.*; *see also* 20 C.F.R. §§ 404.1529 (setting out factors in evaluation of a claimant's pain and other symptoms); 416.929 (same). If the ALJ does not find the claimant's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "supported by the

evidence." Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2, 4; *Jonson v. Colvin*, No. 12cv1742, 2013 WL 1314781, at *7 (W.D. Pa. 28 Mar. 2013) ("If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision."); *accord Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006).

### B.     Analysis

Here, in assessing plaintiff's allegations, the ALJ made the step-one finding that plaintiff's "medically determinable impairment[s] could reasonably be expected to cause some of the alleged symptoms." Tr. 28 ¶ 5.   At the second step of the credibility assessment, the ALJ found that plaintiff's allegations were not fully credible. Tr. 28 ¶ 5.   He stated that "the statements by the [plaintiff] concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent with the . . . [RFC] assessment." Tr. 28 ¶ 5.[9]

The ALJ provided specific reasons for his credibility determination.  Tr. 28-29 ¶ 5.  He stated:

> Specifically, the record does not substantiate the claimant's allegations as to the severely restricting nature of his musculoskeletal impairment.   Although the claimant reported disabling pain, the medical evidence fails to reveal that the claimant was ever in any acute distress and examinations were essentially benign. (Exhibits 3F, 8F, 10F, 11F, 13F, 15F, 17F, and 18F)  In December 2008, the claimant told his doctor that medication (Lyrica) had almost eradicated his pain (Exhibit 9F); in July 2010, he reported that he was doing better with managing his pain and that medication (Methadone) was helpful in pain reduction (Exhibits 10F and 13F); and in November 2010, he reported that his medicine regimen (Methadone) was working well to control his pain (Exhibit 11F).  Notably, in November 2012, December 2012, January 2013, February 2013, July 2013, and September 2013, the claimant described his current pain level as 4-5 on a 10-point

---

[9] In *Mascio*, which postdated the ALJ's decision by over a year, the Fourth Circuit held that this quoted boilerplate language is improper by "'implying that ability to work is determined first and is then used to determine the claimant's credibility.'"  780 F.3d 632, 639 (quoting *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) (internal quotation marks omitted).  But it also held that such error is harmless if the ALJ otherwise properly analyzes the claimant's credibility.  *Id.*  Plaintiff did not object to the ALJ's use of the proscribed boilerplate language.  In any event, his use of it was harmless because his credibility analysis is otherwise proper.

scale (Exhibit 15F pages 2, 5, 17, 20, 23, and 26), which reflects his pain level was tolerable and moderate to distressful. The record also reveals that the claimant had not been compliant in taking his medications.[3] [n.3 reads: "In January 2011, the claimant reported he was out of his Lyrica and in March 2011, he reported he was no longer taking Lyrica as he could not afford it. (Exhibits 11F and 13F)] The claimant reported not taking prescribed medication due to a lack of funds; however, there is no indication that he sought out any services that may have provided his medication on a low cost or no cost basis.

At the prior hearing, the claimant testified he has not walked recently, but told doctors he walks three times weekly. (Exhibit 10F) Although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless, the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable. As for the claimant's alleged disabling problems with his hands, examination findings failed to show any significant motor or sensory deficits. Also distracting from the claimant's credibility is that the record includes evidence suggesting that the claimant has overstated his symptoms and limitations. I note that the claimant's treating physician, Dr. Rose reported the presence of Waddell's signs. (Exhibit 16F[]page 8) Waddell's signs are a group of physical signs, thought to be indicators of a non-organic or psychological component to pain. Historically they have been used to detect "malingering" in patients with back pain.

A review of the evidence of record fails to reveal any signs of muscular atrophy, strength deficits, circulatory compromise, neurological deficits, muscle spasms, or change in weight, which may be reliable indicators of long-standing, severe or intense pain, and/or physical inactivity. Despite the allegations of severe functional limitations, the evidence of record reveals that the claimant has retained a significant range of activities of daily living. At one point or another in the record (either in forms completed in connection with the application and appeal, in medical reports or records (Exhibit 4F), or in the claimant's testimony), the claimant indicated that he was active and able to do household chores, prepare meals, read, watch television, drive, go grocery shopping, care for horses, walk for exercise, and go to school. These activities are not limited to the extent one would expect, given his complaints of disabling symptoms and limitations. While I note that the claimant's ability to perform some physical tasks (at his own pace and in his own manner) is insufficient to establish that the claimant can engage in substantial gainful activity, as noted in the claimant's activities as described above, these activities rise above the ability to work only a few hours a day or to work only on an intermittent basis and indicate functional abilities substantially greater than those alleged.

I conclude the testimony of the claimant is not fully credible concerning the severity of his symptoms and the extent of his limitations. Neither the severity nor the extent is supported by the objective medical evidence of record.

Tr. 28-29 ¶ 5.

Plaintiff challenges the ALJ's credibility determination on the grounds that it is based on cherry picking of evidence. He cites statements he made during three medical visits discussed by the ALJ—those in December 2008, July 2010, and November 2010—that the ALJ purportedly does not include in his discussion. Specifically, plaintiff points out that at the December 2008 visit (with Dr. Melin), he also reported that he had continued numbness and limitation of his activities of daily living and that he had some lower back and right buttock pain (*see* Tr. 363); at the July 2010 visit (with PA Christensen), that he did not have much of a life because a lot of activity increased his pain (Tr. 442); and at the November 2010 visit (with PA Christensen), that his pain was controlled as long as he did not overdo his activities (Tr. 464). But the ALJ did address, as part of his credibility analysis, the primary focus of the alleged omissions, plaintiff's activities, as the quotation above indicates. With respect to the December 2008 visit, the ALJ actually recites, albeit elsewhere in his decision, much of the statement plaintiff alleged was omitted. The ALJ states, plaintiff "indicated that he had only mild disability of his activities of daily living secondary to left arm discomfort and numbness." Tr. 25 ¶ 5.

The court finds that the ALJ was not engaging in cherry picking in characterizing these visits as he did, but was acting within his proper role of weighing the evidence. It is not, of course, the court's role to weigh the evidence anew. In any event, it is noteworthy that the specific findings plaintiff identifies as cherry picking comprise only a limited portion of the evidence the ALJ relied upon in his credibility analysis.

The court concludes that the ALJ's determination of plaintiff's credibility is supported by substantial evidence and contains no reversible error. This challenge to the ALJ's decision should accordingly be rejected.

# VII. ALJ'S ASSESSMENT OF PLAINTIFF'S RFC

## A. Applicable Legal Principles

A claimant's RFC is the most a claimant can still do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.645(a)(1). The assessment of a claimant's RFC must be based on all the relevant medical and other evidence in the record. *Id.* §§ 404.1545(a)(3), 416.645(a)(3). An ALJ's decision must state his RFC determination and provide the supporting rationale for it. *See Mascio*, 780 F.3d at 636.

## B. Analysis

As discussed, the ALJ determined that plaintiff had the RFC to perform a limited range of sedentary work. *See* Tr. 24 ¶ 5. Plaintiff argues that the RFC determination is improper because it fails to take into account various alleged severe limitations plaintiff has, namely, his need to recline throughout the day at unpredictable intervals to help relieve spinal pain, the inability to hold his head down more than occasionally to look at a table top or bench, and numbness and weakness in his hands that affect his handling ability. The vocational expert at the first hearing testified that the first two limitations would, in effect, preclude plaintiff from all work and that the third would preclude plaintiff from all sedentary work and much light work. Tr. 78. The court finds no error.

The ALJ summarized the basis for his RFC determination as follows:

In sum, the above [RFC] assessment for sedentary work, with the additional postural and mental limitations, is supported by the documentation of the claimant's myofascial neck pain status post anterior cervical discectomy/fusion, multi-level lumbar degenerative disc disease, and adjustment disorder at 2F- 4F, 8F-13F, and 16F-18F, the assessment of the consultative psychological evaluator (Exhibit 4F), and the assessments of the State Agency medical consultants (Exhibits 6F and 7F), discussed in detail above.

The objective evidence of record failed to show that the claimant's status post cervical discectomy/fusion, multi-level lumbar degenerative disc disease and

issues regarding his mental disorder have deteriorated, singly or in combination, to the point that they are considered disabling. As discussed in detail above, the claimant's treatment after the cervical fusion in July 2004, including pain management, lumbar epidural steroid injections, a nerve block and various medications, has been essentially routine and/or conservative in nature and generally successful in controlling those symptoms. (Exhibits 2F, 3F, 8F, 9F-11F, 13F, and 15F-18F) Notably, the claimant was routinely found to be in no acute distress and examinations showed negative straight leg raising, 5/5 muscle strength, and normal motor and sensory function. (Exhibits 9F, l0F, 13F, 15F, 16F, and 18F) Nevertheless, because of cervical and lumbar conditions, the claimant has received treatment and experienced some limitations. Therefore, I have limited the claimant to lifting and carrying no more than 10 pounds at a time, sitting for six hours in an eight-hour workday, standing and walking for two hours in an eight-hour workday, a sit/stand option changing positions every thirty minutes to one hour, occasional posturals but no climbing, and occasional overhead reaching, which is consistent with any limitations from his musculoskeletal conditions. I have considered the claimant's adjustment disorder by limiting him to the performance of work involving only simple routine, repetitive tasks. Such consideration is ample noting that the claimant has not required significant mental health treatment and he was consistently described as alert and oriented throughout the medical record without evidence of psychiatric disturbance. Moreover, as previously detailed earlier (under Finding 4), the claimant's affective disorder has not resulted in more than mild to moderate restrictions in his activities of daily living, social functioning, or concentration, persistence, or pace, nor has it resulted in repeated episodes of decompression.

Although the claimant's allegations regarding his limited ability to work are not supported by the evidence of record, I have given the claimant the benefit of the doubt in taking in consideration the combination of his physical and mental impairments and limited the claimant to the [RFC] as set forth above; however, due to the aforementioned inconsistencies in the record as a whole, I cannot find that the claimant's allegation that he is incapable of all work activity to be fully credible. As discussed above, the claimant's daily activities are inconsistent with his allegations of disabling symptoms and limitations, but are fully consistent with the [RFC] described above.

Tr. 31 ¶ 5. This summary followed the ALJ's extensive, detailed review of the medical and other

evidence in the record. Tr. 25-31 ¶ 5.

The court finds that the ALJ's RFC assessment is supported by substantial evidence,

including the evidence he cites. Plaintiff has not demonstrated that the ALJ otherwise committed

any reversible error in the RFC assessment. Plaintiff's challenge to it should accordingly be rejected.

## VIII. ALJ'S HYPOTHETICAL TO THE VOCATIONAL EXPERT

A hypothetical question is proper if it adequately reflects a claimant's RFC for which the ALJ had sufficient evidence. *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005). Plaintiff argues that the hypothetical the ALJ posed to the vocational expert did not reflect all of his limitations and that the ALJ therefore could not properly rely on his testimony.

The court finds no error. The hypothetical to the vocational expert that elicited the testimony on which the ALJ relied adequately reflected the RFC determination by the ALJ, which, as discussed, is supported by substantial evidence. Tr. 54-56. Plaintiff's challenge to the hypothetical should accordingly be rejected.

## IX. CONCLUSION

For the foregoing reasons, the court concludes that the Commissioner's decision is supported by substantial evidence of record and, except for harmless error, is based on proper legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 31) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 25) for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 31 May 2016 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further

evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after filing of the objections.

This 17th day of May 2016.

James E. Gates
United States Magistrate Judge